[Civ. No. 8895. Second Appellate District, Division Two.—December 31, 1934.]

THEODORE CHAMBERLIN, Jr., Appellant, v. HAROLD H. DAVIS et al., Defendants; THE FIRST NATIONAL TRUST & SAVINGS BANK OF SANTA BARBARA, Respondent.

Wm. A. Freeman and C. E. Spencer for Appellant.

E. B. Starbuck and Griffith & Thornburgh for Respondent.

STEPHENS, P. J.—From the year 1926, one Harold H. Davis and one Judge B. Canfield owned adjoining ranches in the Los Olivos district of Santa Barbara County. They together with one Long owned the waters of Zaca Creek, Long owning one-half thereof, Canfield, one-third and Davis one-sixth. From time to time Canfield and Davis worked together harmoniously in relation to their water rights; Canfield usually assuming the burden of the planning and construction necessary and Davis always paying to Canfield one-third of any expense incurred.

For some time Canfield and Davis had discussed and planned the building of a dam across Zaca Creek. Davis told Canfield that he, Davis, would pay one-third of the cost of the dam.

On February 25, 1929, Canfield sold to appellant, Theodore Chamberlin, Jr., all of his interest in the ranch, including his water rights in Zaca Creek. As part of the consideration for the sale Canfield agreed with Chamberlin to pay the sum of $10,000 and no more, toward the cost of the construction of said dam, which sum of $10,000 was placed in escrow by the parties. By the terms of the escrow, if the dam cost less than $10,000, Canfield was to receive the difference. Chamberlin proceeded to have the dam built and when finished the cost amounted to $12,478.47.

On April 10, 1929, Canfield notified Davis of the fact that he, Canfield, had put up $10,000 for the contemplated work and would look to Davis for his proportionate share of money actually expended, to which Davis answered without in any manner objecting to the portion fixed as his liability.

Canfield died April 19, 1929, and respondent, The First National Trust & Savings Bank of Santa Barbara, became executor of his estate and later trustee under his will.

After the death of Canfield, and before appellant had let the contract for the building of the dam, Davis went to the executor bank to see about paying his share. The cost was not then definitely known. Whereupon Davis, under date of May 22, 1929, gave the bank the following writing:

"Confirming our conversation relative to the dam being built by Mr. Chamberlin in connection with his portion of the ranch purchase from the last Robert B. Canfield, I beg to advise that, as owner of a portion of this ranch, I consider myself responsible for one-sixth (1/6) of the expenses of this dam, and agree to reimburse you, upon demand, as Executors of the above Estate, for the amount which you are advancing for me."

· On July 31, 1929, Davis paid to the bank $439.01, being one-sixth of bills incurred by Canfield prior to his death relative to preliminary engineering, sounding for bedrock, right of way, etc. Subsequently, on October 18, 1929, Davis paid to the bank $2,100, accompanying the payment with the following letter:

"First National Trust and Savings Bank,

"Santa Barbara, California

"I hand you herewith the sum of $2100.00 which you are authorized to use as follows:

"Secure a statement of the cost of the Canfield dam 1/6th of which cost I am to pay. Out of funds handed you herewith you are authorized to pay bills in an amount equal to 1/6th of said cost after retaining the sum of $1,667.00 to be held until such time as you secure for me an instrument signed by both First National Trust and Savings Bank of Santa Barbara and Theodore Chamberlin, Jr. The said agreement should designate the party to whom said $1,667.00 is payable.

"The amount handed you herewith should be in full of all claims and demands against me by reason of my agreement to pay 1/6th of the costs of said dam. Any moneys remaining after the payment of said 1/6th are to be returned to me.

"Yours truly,

"HAROLD H. DAVIS."

"Oct. 18, 1929

Appellant as plaintiff filed his complaint against Davis, against the bank as the escrow holder, and against the bank as the executor of the estate of Canfield, for the sum of $1,879.19, claiming that Davis was indebted to appellant in that sum "for and on account of money laid out and expended within two (2) years last past by plaintiff for and on behalf of said defendant and for his use and benefit at the special instance and request of said defendant and which said defendant promised and agreed to repay to plaintiff". The complaint set forth the deposit of the said $1879.19 with the bank and that the bank as executor of the estate of Canfield claimed an interest in the money. Answers and cross-complaints and answers to cross-complaints were filed. Davis disclaimed any interest in the money, whatsoever, and by the time the case came to trial it was stipulated that there was a total of $1934.50 remaining in the hands of the bank and said amount was at that time deposited with the clerk of the court, leaving the sole issue to be determined, whether the money should be paid to appellant Chamberlin or to the bank as trustee under the will of Canfield. The court made its findings in favor of the bank as trustee, whereby the bank as such trustee was to receive $1666.67, being one-sixth (1/6th) of the cost of the dam, and the remainder of the $1934.50 so deposited, to wit, $267.83, should be paid to appellant, and that there was not any contractual obligation on the part of Davis to pay anything to appellant.

From the judgment in accordance with said findings appellant appeals, claiming that the findings and judgment should have been in his favor for the full amount, basing his claim upon the conteniton that the evidence showed a contractual liability on the part of Davis to appellant.

A summary of the testimony on this question by appellant Chamberlin was, that his first conversation with Davis was

in May, 1929, after he had purchased the ranch, at which time he told Davis he had purchased the ranch from Judge Canfield and that one of the conditions of the purchase was than a dam had to be built by Chamberlin so that he could get the water into the distribution box; that Davis told appellant that he, Davis, had a one-sixth interest in the dam and that he was going to pay one-sixth of the cost of the dam and requested Chamberlin to keep him advised as to what was going on; that he, Chamberlin, let the contract in June and construction started about the 1st of July; that about the middle of August, in conversation with Davis, he told Davis that the dam was going to cost over $12,000 and that Davis said he was going to pay one-sixth of the cost of the dam; that he had one-sixth interest in the water and that he wanted a one-sixth interest in the dam; that he wanted to pay me for the one-sixth; that Davis wanted to know if he, Chamberlin, wanted some money; that he told him, no; that he would complete the dam and when he had the final figures they could make a settlement; that it was soon thereafter that the bank, as executor of Canfield's estate made a demand on Davis for one-sixth (1/6th) of the cost of the dam. Davis told me "that the Bank had requested some money from him and that he advised me to go down and see the Bank and find out if I couldn't straighten it out". A few days later I met him . . . and he says, "Ted, you had better go and see the Bank. I have been in there again and they want that money, you better go down and straighten it out." Mr. Davis, a few days later, telephoned me that he had deposited the money in the bank; that he had put the money in escrow; that the bank had made a demand on him; that he did not know whether he was obligated to pay him, Chamberlin, or the bank and that he was putting it into escrow with instructions to protect himself. Chamberlin further testified that in his contract with Judge Canfield the only sum of money that Judge Canfield was to contribute for the cost of the dam was $10,000; that this amount had been paid by the bank.

Davis, called under section 2055, Code of Civil Procedure, testified that he had several conversations with Chamberlin concerning the dam; that in one conversation, about the middle of August, he told Chamberlin that he was going to pay one-sixth of the cost of the dam; that he did not say

to whom he would pay it; that "The question to whom I should pay it at that time did not come up"; that he, Davis, knew that Chamberlin was building the dam and that Judge Canfield had put up $10,000 for that purpose.

The testimony further showed that there was not any agreement in writing between Chamberlin and Davis.

Giving the testimony the most favorable interpretation possible to appellant, the most that can be said for it is that Davis expressed a willingness or desire to pay one-sixth of the cost of the dam. The proof fails completely to show any contractual obligation on the part of Davis to pay anything to Chamberlin.

██ Appellant further contends that the evidence is insufficient to show any contractual liability on the part of Davis to Canfield and that, therefore, the portion of the judgment in favor of the bank as trustee under the will of Canfield is not supported by the evidence.

Irrespective of whether the evidence does or does not so show, it is not a matter concerning which appellant can complain; that would be a matter of complaint lying solely with Davis and he has not appealed.

Judgment affirmed.

Crail, J., concurred.

This opinion was prepared by Schmidt, J., *pro tem.*

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 30, 1935.